**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

STEPHANIE N.,
      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
      Defendant.

Case No. 4:19-cv-04122-SLD-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 12), the Defendant's Motion for Summary Affirmance (Doc. 16), and the Plaintiff's Reply (Doc. 17). This matter has been referred for a report and recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be denied and the Defendant's Motion for Summary Affirmance be granted.[1]

**I**

Plaintiff Stephanie N. filed a Title II application for disability insurance benefits (DIB) on February 26, 2016 and a Title XVI application for supplemental security income (SSI) on March 11, 2016. She alleged disability for both DIB and SSI beginning on January 1, 2014. Her claims were denied initially on May 10, 2016 and upon reconsideration on August 3, 2016. Stephanie filed a request for hearing concerning her DIB and SSI applications which was held via video on November 28, 2017 before the Honorable Kathleen Winters (ALJ). At that hearing, Stephanie

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 8) on the docket.

was represented by an attorney, and Stephanie and a vocational expert (VE) testified. Following the hearing, Stephanie's DIB and SSI claims were denied on April 11, 2018. Her request for review by the Appeals Council was denied on March 19, 2019, making the ALJ's Decision the final decision of the Commissioner. Stephanie timely filed the instant civil action seeking review of the ALJ's Decision on June 17, 2019.[2]

## II

At the November 2017 hearing, Stephanie was 47 years old and lived with her parents in a house. She claimed the following conditions limited her ability to work: depression; anxiety; posttraumatic stress disorder (PTSD); fibromyalgia; chronic pain syndrome; hypertension; anemia; high cholesterol; and hypothyroidism. AR 257.

Stephanie testified that she babysat in 2015 three days a week for approximately six months. She also testified she worked as a sales clerk in 2013, a casino worker in 2012, a housekeeping supervisor, a casino security worker, a welder, a line cook, and a breakfast cook. She did not have her driver's license as she did not want to renew it because she was not ready to drive because of the medications she took. She said the following prevented her from being able to perform any type of work activities: hip problems, knee problems, ankle problems, and uncontrolled fibromyalgia which caused a lot of pain in her spine and shoulders. She also said she had a hard time gripping things. She said "little things in life are very hard" such as doing little household chores. AR 57. She also said walking was "really hard." AR 58. She continued to take the stairs in her house several times a day. The doctors treated her physical issues with

---

[2] Stephanie sought and received an extension of time to file a civil action following the Appeals Council's denial of her request for review of the ALJ's Decision. *See* AR 7.

medications.   As for her mental health issues, Stephanie testified she saw her therapist three months before the hearing.

Upon questioning by her attorney, Stephanie explained that in all her previous work, she had a problem with a supervisor just once; her supervisor reminded her of a traumatic incident that happened in 1998 which exacerbated her PTSD.  She ended up quitting that job, and she did not have such issue in any of her other jobs.  She said she had nightmares three to four times at night which came and went from night to night.  She said she had "crowd anxiety" when there were too many people at one time in the store with her.  She said she had daily feelings of worthlessness.  She said she cried "[j]ust about every day."  AR 69.  She sometimes cooked.  She cleaned, but it took her all day to get everything done due to her energy level and pain in the arms and legs.  She said she "really [didn't] sit down a lot" because that caused stiffness and soreness.  AR 67.

The VE was also questioned.  Stephanie's attorney stipulated to VE Alfred Walker's qualifications.  The ALJ asked the VE to let her know if his answers were not consistent with the information contained in the Dictionary of Occupational Titles (DOT).  The ALJ asked the VE to assume:

> A hypothetical individual of the claimant's age, education, and with the past jobs [discussed].  Further assume this individual can perform work at the medium exertional level; with work that can be learned in 30 days or less; with simple routine tasks; simple work-related decisions; and routine workplace changes.

AR 76.  The VE responded that just one of Stephanie's previous four jobs remained, but other work existed.  The ALJ added to the hypothetical that the individual was limited to occasional interaction with coworkers with no tandem tasks, occasional interaction with supervisors, and no interaction with the general public.  The VE responded that would not change his answer.  The ALJ then asked what jobs were available for such a hypothetical individual limited to light work.   The VE

responded all of Stephanie's past work was eliminated and she was limited to the following light strength, unskilled work: patch worker with a "frequency" of 140,000; domestic laundry worker with a frequency of 105,000; and housekeeper with a frequency of 103,000. AR 77. Only 10% off task behavior would be tolerated and only eight to 10 absences per year would be tolerated.

The ALJ asked the VE if his answers regarding off task behavior and absenteeism and additional breaks were information contained within the DOT. The VE responded that his testimony in those regards was based upon his professional and personal experience. The ALJ next asked:

Q.    Were your other answers consistent with the information contained in the [DOT]?
A.    Yes. Your Honor.

AR 79.

### III

In her Decision, the ALJ found Stephanie had the following severe impairments: bilateral hip bursitis; obesity; fibromyalgia; depression; PTSD; and anxiety. AR 21. As for the "paragraph B" criteria of mental impairment Listings 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), and 12.15 (Trauma-and stressor-related disorders), the ALJ determined Stephanie had mild limitation in understanding, remembering, or applying information. In support of that finding, the ALJ pointed to Stephanie's ability to provide information about her health, describe her prior work history, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers. Stephanie had moderate limitations in interacting with others where she alleged difficulty spending time in crowds but, per her own statements, she was able to get along with others, spend time with family and friends, deal appropriately with authority, and live with others.

4

Stephanie had moderate limitations in her ability to concentrate, persist, or maintain pace where she contended she had limitations in concentrating longer than 15 minutes before requiring a break and completing tasks, but, on the other hand, she stated she was able to prepare meals, watch television, read, complete crossword puzzles, manage funds, use the internet, and handle her own medical care. Stephanie had no limitations in her ability to adapt or manage herself.

The ALJ made the following residual functional capacity (RFC) finding:

[T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can perform work that can be learned in 30 days or less, with simple routine tasks, simple work-related decisions and routine work place changes; with occasional interaction with coworkers with no tandem tasks; occasional interaction with supervisors, and no interaction with the general public.

AR 23. The ALJ specifically cited medical records dated 2015, 2016, and 2017. During that time, Stephanie reported pain, was treated for fibromyalgia, was treated with medications, was issued a physical therapy referral, was treated in the emergency room for bilateral hip pain, and was given a right trochanteric bursa injection.

The ALJ articulated:

The claimant's reported symptoms of pain, fatigue and limited range of motion resulting from her physical impairments are consistent with the medical and other evidence of record to the extent she is limited to a range of light work. Light work requires lifting and carrying of 20 pounds occasionally and 10 pounds frequently, with frequent standing and walking.

AR 24. The ALJ then explained her reasons for finding the record not consistent with the finding that Stephanie was completely unable to work.

The ALJ next detailed the evidence that Stephanie sought emergency treatment for chest pains in August 2015 which resulted in a general anxiety

5

diagnosis, she was given prescriptions to treat her mental health issues, and that she consistently presented for treatment. Stephanie's treating Advanced Registered Nurse Practitioner Stacy Roth wrote a letter in May 2017 in which she noted Stephanie was being treated for Bipolar disorder, generalized anxiety disorder, and PTSD. ARNP Roth stated Stephanie continued to have breakthrough symptoms of extreme depression and anxiety. Psychological consultative examiner John Zagotta, PsyD., found Stephanie demonstrated appropriate comprehension, memory, general fund of knowledge, and abstract reasoning in April 2016.

The ALJ gave the reviewing State Agency medical examiners' opinions that Stephanie was limited to heavy exertional work with moderate limitation in two of the four areas of mental functioning "some weight." AR 27. The ALJ explained:

> Although these opinions are consistent with the record before the state agency, the undersigned has benefit of additional records, specifically records related to the claimant's bursitis of the hip and fibromyalgia, which supports the more restricted exertional limitation dictated in this decision. Further, the undersigned also has the benefit of the claimant's testimony.

*Id.* ARNP Roth's opinion that Stephanie was moderately limited in her ability to understand, remember, and carry out instructions was "consistent with other evidence of record, specifically Dr. Zagotta's finding that the claimant's anxiety causes working memory deficits." *Id.* The ALJ stated, that ARNP Roth's opinion that Stephanie was markedly limited in her ability to interact with others was "not supported by either her treatment of the claimant or the record as a whole." *Id.*

## IV

Stephanie argues: 1) the ALJ erred in evaluating Stephanie's subjective symptoms; 2) the ALJ improperly dismissed the treating opinion of a nurse

practitioner; 3) the ALJ failed to include all of Stephanie's mental limitations into the hypothetical and RFC; and 4) the VE's testimony conflicts with SSR 00-4p.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that her inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th

Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1)  currently performs or, during the relevant time period, did perform any substantial gainful activity;

2)  suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3)  suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4)  is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5)  is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Stephanie claims error on the ALJ's part at Steps Four and Five.

## A

Stephanie argues that the ALJ erred in evaluating her subjective symptoms where the ALJ did not explain which of her statements were credible, failed to cite

8

specific medical evidence that contradicted Stephanie's subjective symptoms, did not explain how Stephanie's ability to perform light daily activities with limitations undermined her allegations of pain, and never considered medication side effects or their impact on Stephanie's ability to work. The Commissioner counters that the ALJ reasonably found Stephanie's activities suggested she was not as limited as she claimed, the medical records did not suggest Stephanie was as limited as she claimed, and the ALJ reasonably surmised that evidence to which she cited suggested that Stephanie's symptoms were well-controlled.

SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. SSR 16-3p, at *7-8.

Beyond merely stating the boilerplate that the Seventh Circuit Court of Appeals has criticized as legally insufficient, the ALJ clearly articulated her reasons for finding Stephanie's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical and other evidence. The ALJ explained with regard to her fibromyalgia, among other things, that Stephanie did not complain of chronic, diffuse pain until nearly two years after the alleged onset date, she did not act on her initial rheumatology

referral from her primary care physician for nine months[3], had not seen a rheumatologist or pain specialist for treatments to the date of the Decision, consistently presented in no acute distress with good strength in all muscle groups and all extremities, and underwent sensory exams that revealed equal and normal sensation. The ALJ explained further that Stephanie's fibromyalgia symptoms had been well controlled since August 2017 at which time no adjustments to her medications were made which suggested Stephanie's current treatment regimen was satisfactory in managing her symptoms.  The ALJ also pointed out that Stephanie stopped participating in physical or occupational therapy in January 2017 after failing to attend three consecutive appointments.

With regard to Stephanie's mental impairments, the ALJ explained Stephanie consistently presented for treatment even during times of symptom exacerbation with appropriate mood and affect and normal insight and judgment, she did not complain of audio or visual hallucinations except following her methamphetamine use, she demonstrated appropriately during the psychological consultative examination, and she had not been hospitalized since the alleged onset date because of her mental health impairment.  The ALJ also pointed out that while Stephanie testified she participated in mental health counseling with Vicki Todd, the record did not contain any treatment records from Todd.  The ALJ further noted that the record similarly did not support Stephanie's testimony that

---

[3] Stephanie attempts to undermine the ALJ's reasoning on this point by arguing that a treatment record indicated Stephanie was prevented from seeing a rheumatologist due to the expense.  As the Commissioner points out, that treatment record repeated Stephanie's report that she stopped seeing a rheumatologist in Peoria due to the expense of *traveling* to do so, not the expense of the doctor himself/herself.  The ALJ's additional reasons in finding inconsistency between Stephanie's subjective statements and actual functional limitation - that Stephanie was not diagnosed with fibromyalgia by a rheumatologist and to the date of the Decision had not seen a rheumatologist or pain specialist for treatment - are not challenged by Stephanie.

she saw a psychiatrist every month where it showed she visited a nurse practitioner for medication management approximately every six months.

The foregoing reasons were the requisite specific reasons supported by the record the ALJ relied upon in support of her adverse finding as to Stephanie's subjective statements of pain and limitation caused by her impairments. *See Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (stating that the court defers to an ALJ's credibility finding that is not "patently wrong" and is explained with specific reasons supported by the record).

The ALJ cited specific medical evidence that contradicted Stephanie's subjective symptoms; he pointed to no joint swelling or stiffness, a normal gait, full bilateral grip strength, normal ability to grasp and manipulate objects, and full range of all joints. With regard to Stephanie's daily activities, the ALJ found them inconsistent with those of an individual with disabling physical impairments because Stephanie continued to ascend and descend stairs several times each day, prepare meals on a daily basis, and perform household chores. The ALJ also found it telling that, *since* the alleged onset date, Stephanie babysat a toddler in her home three days a week at least as of May 2015 and reported she last worked at a convenience store two years before April 2017. Nothing suggests the ALJ equated Stephanie's daily activities with the activities of a full-time job. Rather, the ALJ considered them to "determine whether her symptoms were as severe and limiting as she alleged." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020).

While the ALJ did not specifically address Stephanie's complained-of side effects from her medications of dizziness and drowsiness, the error was harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). She cites to nothing more than her own testimony and a medical record in which it was

11

noted, "NO dizziness."[4]  *See* AR 517 (emphasis in original).  *See Rasmussen v. Astrue*, 254 F. App'x 542, 547 (7th Cir. 2007) (unpublished opinion) (deciding ALJ's failure to address more comprehensively the claimant's drowsiness caused by medications was harmless where the claimant presented no evidence of her medication's side effects beyond her own testimony and the medical records did not support her claim that said drowsiness was so disabling she could not work). Stephanie's testimony as to medication side effects was as follows:

> Q.   . . . Do you have any adverse side effects from any of your medications?
> A.   Just drowsiness, dizziness.
> Q.   . . . Have you mentioned that to your doctor?
> A.   Yeah.  She said that's – unfortunately, that's some of the side effects of the medications, the – That's why I'm not really worried about driving right now.

AR 61-62.  Such testimony coupled with Stephanie's failure to cite any medical records supportive of her claim that her medications' side effects were so disabling as to preclude work does not compel remand.

Lastly, Stephanie argues that evidence of treatment she received from ARNP Roth should have prompted the ALJ to solicit information from Todd which would have confirmed treatment with Todd.  "A court will defer to the ALJ's judgment that the record has been adequately developed unless [it] finds a 'significant omission' in the evidence."  *Thomas v. Barnhart*, 54 F. App'x 873, 878 (7th Cir. 2003) (unpublished opinion) (citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994)).  An omission is significant only if it is prejudicial.  *Id.* (citing *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997)).  Stephanie has not convinced the Court of prejudice for a few reasons.  First, Stephanie does not state any treatment

---

[4] Notably, Stephanie instead includes footnotes in her brief which list the *potential* side effects for medications she was prescribed.  *See, e.g.*, Plf's MSJ (Doc. 13 at pg. 14 n.3).

12

records from Todd actually exist, and she does not state, if they do exist, what those records provide. Stephanie offers only speculation. Second, Stephanie does not explain why treatment with Nurse Roth should have prompted the ALJ to solicit information from Todd. Nowhere in Roth's opinion or treatment record does she mention Todd. Third, the ALJ provided reasons in addition to a lack of treatment records from Todd for why she found Stephanie's subjective symptoms not entirely consistent with the record evidence. Those reasons provide the requisite logical bridge between the evidence and that conclusion. Finally, the fact remains that Stephanie, because she was represented by counsel at the hearing, was presumed to have made her best case before the ALJ. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). Though Stephanie referred to therapy with Todd at the hearing while being questioning by the ALJ, Stephanie's counsel did not attempt to elicit further information about the frequency or nature of that treatment relationship with Todd. Ultimately, the ALJ's subjective symptom evaluation was not patently wrong.

**B**

Stephanie also argues that the ALJ failed to explain how ARNP Roth's 2017 medical source opinion was inconsistent with the record and Roth's own treatment notes which led the ALJ to give Roth's opinion only "some weight." Stephanie specifically takes issue with the ALJ's consideration of Roth's opinion regarding Stephanie's limitations in social interaction. The Commissioner dismisses Stephanie's arguments in this regard to be mistaken, a nonstarter, and a mischaracterization of record evidence.

It appears Stephanie believes ARNP Roth's opinion should have been given controlling weight pursuant to the treating physician rule in 20 C.F.R. § 404.1527. However, an ARNP was not an "acceptable medical source" under the agency's rules at the time of the ALJ's Decision. *See* SSR 06-03p (rescinded) (providing that

medical sources who were not acceptable medical sources included nurse practitioners). Thus, she did not get the benefit of the treating physician rule and the ALJ was instead tasked with considering all of the following factors in deciding the weight to given Roth's opinion. 20 C.F.R. § 404.1527(c). The listed factors include: 1) examining relationship; 2) treatment relationship, which in turn includes length of the treatment relationship and the frequency of examination, and the nature and extent of the treatment relationship; 3) supportability; 4) consistency; 5) specialization; and 6) other factors brought to the Social Security Administration's attention. *Id.*[5] Very recently, the Seventh Circuit Court of Appeals addressed a claimant's argument that the ALJ improperly disregarded a nurse practitioner's opinions. *Sosh v. Saul*, No. 19-3313, 2020 WL 3969624, at *1 (7th Cir. July 14, 2020), -- F. App'x --. The Seventh Circuit explained:

> So long as an ALJ "minimally articulates" her reasons . . . we will uphold her decision to reject a medical opinion. *Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008). True, the ALJ did not explicitly consider every factor listed under § 404.1527(c). But for someone like [the nurse practitioner] who was not an acceptable medical, the application of these factors "depends on the particular facts" and "not every factor . . . will apply in every case." 20 C.F.R. § 404.1527(f)(1).

*Id*. at *3.

Here, the ALJ minimally articulated her reasons for giving APN Roth's 2017 opinion only "some weight." As for APN Roth's opinion that Stephanie was moderately limited in her ability to understand, remember, and apply, the ALJ explained that opinion was consistent with other evidence of record, "specifically Dr. Zagotta's finding that the claimant's anxiety causes working memory deficits." AR 27. As for Roth's opinion that Stephanie was markedly limited in her ability

---

[5] The treating physician rule found in 20 C.F.R. § 404.1527 has been eliminated by the Social Security administration. However, the rules in § 404.1527 apply to claims filed before March 27, 2017.

to interact with others due to social anxiety and difficulty interacting in social settings, the ALJ explained that opinion was not supported by either her treatment of the claimant or the record as a whole. The ALJ pointed out Stephanie lived with others, enjoyed spending time with family and friends, shopped in stores, and showed no difficulty presenting for various appointments and physical therapy sessions. The ALJ's discussion of the record evidence elsewhere in the Decision sheds more light on how she reached the conclusion that Stephanie did not have marked limitation in social interaction. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). The ALJ cited to Stephanie's own representations that she was able to get along with others and deal appropriately with authority. Moreover, the medical evidence showed she had a good rapport with providers and was described as pleasant and cooperative.

Stephanie premises her argument as to Roth's opinion on what she presents as a foregone conclusion – that her subjective statements as to her ability to function were entirely and undeniably consistent with all the record evidence. That is not the way the process works. *See, e.g., Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("In assessing the claimant's RFC, the ALJ must consider both the medical and nonmedical evidence in the record"); *and* SSR 16-3p (providing that *all the evidence*, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms) (emphasis added).

Stephanie refers to Roth's "treatment notes" in the record and faults the ALJ for offering no description of inconsistent evidence from APN Roth's treatment notes. Stephanie does not point to any of Roth's treatment notes; instead, she points to Roth's May 2017 letter and August 2017 medical source statement.

15

Stephanie cannot expect the Court to fault the ALJ for failing to cite Roth's treatment notes showing inconsistency when Stephanie does not point to any treatment notes by Roth whatsoever, let alone any such notes showing consistency with her opinion. True, the ALJ did not address evidence that Stephanie had an emotional support animal. But the ALJ was not required to discuss every piece of evidence. The ALJ also did not parse out how each of Stephanie's subjective statements as to her ability to function contradicted Roth's opinion. But the ALJ properly considered Stephanie's subjective statements in light of other record evidence (as analyzed *supra*), and the ALJ adequately explained why Roth's opinion was entitled to only "some weight" in light of other record evidence. In so doing, the ALJ explained how the evidence showed Stephanie could perform the work set forth in the RFC determination. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("an ALJ need not mention every piece of evidence, so long he builds a logical bridge from the evidence to his conclusion").

C

Stephanie next challenges the ALJ's mental RFC finding and hypothetical presented to the VE as incomplete because there was no language in either pertaining to her concentration impairments. The Commissioner argues the ALJ did not omit any documented limitations and Stephanie cites no medical evidence indicating she was more limited than assessed.

As the Commissioner points out, "the Court reviews an ALJ's decision on a case-by-case basis." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019). Stephanie even recognizes that an ALJ need not use "specific terminology" in crafting the hypothetical question for the VE. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (2019) (stating that an ALJ need not use "specific terminology" in crafting the hypothetical question for the VE). Nevertheless, both parties cite to particular cases in support of their respective arguments as to the ALJ's mental RFC and

hypothetical questions to the VE. "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). The hypothetical must therefore "explicitly account for" deficiencies in concentration, persistence, or pace. *DeCamp*, 916 F.3d at 675.

The ALJ determined the record supported Stephanie had moderate limitation in her ability to concentrate, persist, or maintain pace where she was able to prepare meals, watch television, read, complete crossword puzzles, manage funds, use the internet, and handle her own medical care. The ALJ considered Stephanie's statements that she suffered anxiety on a daily basis and that she suffered from depression and feelings of worthlessness, as well as Roth's statements that Stephanie had symptoms of chronic anxiety and worry and periods of depression and irritability. As detailed previously, the ALJ determined Stephanie's subjective statements as to the limitation caused by her mental impairments were not entirely consistent with the record, nor was Roth's opinion sufficiently consistent with the record to give it any more than some weight. Psychological consultative examiner Dr. Zagotta explained that his mental status examination of Stephanie revealed "working memory deficits that may have been negatively influenced by her anxiety levels." AR 463. Dr. Zagotta still found Stephanie demonstrated appropriate comprehension, memory, general fund of knowledge, and abstract reasoning. The State Agency reviewing doctors provided in the narrative section of their opinions that Stephanie retained the mental capacity to understand, remember, and concentrate sufficiently in order to carry out one and two-step instructions/tasks and to sustain efforts for a normal work period. They also opined Stephanie could make simple work-related decisions and could adapt to simple, routine changes and pressures in the work environment. The ALJ gave those opinions "some weight." AR 27. The ALJ

adequately considered the preceding evidence of record and in doing so, enabled the Court to trace the path of her reasoning from that evidence to finding no more than moderate limitations in concentration, persistence, or pace and in social interaction.

The ALJ's mental RFC finding limited Stephanie to work that could be learned in 30 days or less, with simple, routine tasks, simple work-related decisions routine work-place changes, occasional interaction with coworkers with no tandem tasks, occasional interaction with supervisors, and no interaction with the general public. The hypothetical presented to the VE was the same. The ALJ explained:

> The available medical and other evidence supports the mental limitations set forth above in the [RFC] assessment set forth above [sic]. The undersigned has considered all of the available evidence, including the evidence set forth in the "paragraph B" analysis discussed earlier in this decision, which established moderate limitations in two of the four areas of mental functioning. Due to the claimant's symptoms associated with her anxiety and depression, she is limited to unskilled work with only simple, routine tasks, simple work-related decisions and routine work place changes. Due to her anxiety, depression and PTSD, the claimant is also limited to only occasional interactions with coworkers and no tandem tasks. Further, the claimant is limited to occasional interaction with supervisors and no interaction with the general public.

AR 27. The foregoing reveals the ALJ determined the anxiety which caused limitation in concentration, persistence, or pace was the very same anxiety exacerbated by social interaction. Thus, by limiting Stephanie's social interaction the ALJ necessarily accounted further for her limitations in concentration, persistence, or pace caused by her anxiety. Just because Stephanie says otherwise, that her concentration difficulties were not sufficiently accounted for by limiting her social interaction, does not make it true. The ALJ's mental RFC was responsive

18

to the moderate limitations in concentration, persistence, or pace caused by her anxiety and depression standing alone (simple, routine) and to her moderate limitations in concentration, persistence, or pace caused by the combination of her anxiety, etcetera and social interaction (occasional interaction with coworkers and supervisors, no interaction with the general public, no tandem tasks).

As for Stephanie's rather cursory argument that the RFC determination also failed to adequately account for her fibromyalgia and medication side effects, Stephanie again premises that argument on what she presents as a foregone conclusion – in this instance, that her fibromyalgia symptoms and medication side effects were truly as limiting as she claimed. Because the ALJ was required to incorporate only those limitations supported by the medical record, and because her findings as to Stephanie's limitations were supported by substantial evidence as analyzed above, the ALJ committed no reversible error in this regard.

## D

Finally, Stephanie argues that ALJ failed by never asking the VE at the hearing for the source of his numbers or the methodology used for his testimony regarding the reduction of the numbers of jobs available for the described hypothetical individual. She argues further that there was an apparent conflict between the housekeeping and laundry worker jobs the VE identified and Stephanie's RFC which prohibited public contact. The Commissioner argues Stephanie's challenges to the VE's testimony are waived because she did not raise them at the hearing. In her Reply, Stephanie insists she did not waive her SSR 00-4p arguments because ALJs are not released of their express duty and requirement under SSR 00-4p to reconcile apparent conflicts regardless of the issues raised during the hearing.

SSR 00-4p provides, in relevant:

> Occupational evidence provided by a VE or VS generally should be
> consistent with the occupational information supplied by the DOT.
> When there is an apparent unresolved conflict between VE or VS
> evidence and the DOT, the adjudicator must elicit a reasonable
> explanation for the conflict before relying on the VE or VS evidence
> to support a determination or decision about whether the claimant is
> disabled. At the hearings level, as part of the adjudicator's duty to
> fully develop the record, the adjudicator will inquire, on the record,
> as to whether or not there is such consistency.

SSR 00-4p, at *2. The Seventh Circuit has "repeatedly noted that if a vocational
expert's testimony appears to conflict with the DOT, the ALJ must obtain a
reasonable explanation for the apparent conflict, and that a claimant's failure to
object during a hearing cannot excuse an ALJ's failure to do so." *Brown v. Colvin*,
845 F.3d 247, 254-55 (7th Cir. 2016) (internal quotations omitted). "A conflict is
apparent if it is 'so obvious that the ALJ should have picked up on [it] without any
assistance.'" *Weatherbee*, 649 F.3d at 570 (quoting *Overman v. Astrue*, 546 F.3d 456,
463 (7th Cir. 2008)). Here, the VE testified that a hypothetical individual with
Stephanie's RFC would be able to perform the jobs of domestic laundry worker,
DOT code 302.685-010 and housekeeper, DOT code 323.687-014 in addition to that
of patch worker, DOT code 381.687-030.

The DOT code 323.687-014, entitled "Cleaner, Housekeeping (any
industry)," provides, among other things, that a housekeeper "cleans rooms and
halls in commercial establishments" and "renders personal assistance to
patrons." DICTIONARY OF OCCUPATIONAL TITLES,
www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT03A. There
was an obvious conflict between a limitation to "*no* interaction with the general
public" and such job requirements. Thus, the ALJ committed error by failing to
obtain a reasonable explanation for the conflict from the VE at the hearing, and
Stephanie did not waive the instant challenge to the VE's testimony for failing to

raise it at the hearing. *See Overman*, 546 F.3d at 463 (explaining that "because SSR 00–4p imposes an affirmative duty on the ALJ to inquire into and resolve apparent conflicts, a claimant's failure to raise a possible violation of SSR 00–4p at the administrative level does not forfeit the right to argue later that a violation occurred"). Nevertheless, the ALJ's error in that one regard was harmless in light of the remainder of the VE's testimony.

The DOT code 302.685-010, entitled "Laundry Worker, Domestic (domestic ser.)," provides, among other things, that a laundry worker "[t]ends automatic washing and drying machines to clean and dry household articles and presses household articles," [s]orts, irons, and folds dried articles," and "[m]ay perform other housework." The Court cannot say there was any such obvious conflict between Stephanie's limitation to occasional interaction with coworkers, occasional interaction with supervisors, and no contact with the general public and the VE's testimony identifying a job in a *domestic* setting that a person with those limitations could perform. Stephanie argues that "according to the DOT," the job of laundry worker requires an employer to render personal service to "patrons" as the most important work activity. But Stephanie does not cite to the DOT for that point, she instead cites the Occupational Information Network (O*NET).[6] The O*NET is not one and the same as the DOT, and SSR 00-4p only speaks of conflicts between occupational evidence provided by a VE and occupational information supplied by the DOT. *See Ronald W. v. Saul*, No. 17 CV 8536, 2019 WL 3889625, at *5 (N.D. Ill. Aug. 19, 2019) (summarizing the VE's testimony in that case which provided that the DOT had not been updated since 1992 and was updated on a regular basis through the O*NET); *Wennersten v. Colvin*, No. 12-cv-

---

[6] Stephanie cites the following source: https://occupationalinfo.org/onet/62031.html. That page does not mention "patrons." In fact, that page provides the Title of "Housekeepers, Private Household" and the Definition of that Title as follows: "Manage, maintain, and clean private home and render personal services to family members." https://occupationalinfo.org/onet/62031.html (last visited July 28, 2020).

783, 2013 WL 4821474, at *4 (W.D. Wis. Sept. 10, 2013) (discussing how the O*NET has "superseded the DOT as the federal government's primary source of occupational information"). If the DOT and O*NET are to be considered one and the same for purposes of SSR 00-4p, the Ruling does not say as much and Stephanie cites to no case law within this circuit which provides as much. The VE agreed that his testimony was consistent with the DOT, and he did not mention any other basis for his testimony in that regard.[7] *See* AR 79.

Thus, the ALJ properly relied upon the ALJ's testimony regarding the domestic laundry worker job. Stephanie "tak[es] the VE at his word about the [140],000 patcher jobs" in her Reply. Plf's Reply (Doc. 17 at pg. 6). Thus, the number of jobs the VE testified were available between the domestic laundry worker (105,000) and patch worker jobs amounted to 245,000 jobs nationally. Stephanie baldly states that the numbers the VE gave do not meet the definition of significant. True, cases within this Circuit have only ever determined the local/regional numbers that amounted to "significant" numbers of jobs for purposes of the Commissioner's Step Five burden. But Stephanie points to no authority that states 245,000 jobs nationally is *not* a significant number, and the Court will not say otherwise in the absence of such authority. *See Herrmann v. Colvin*, 772 F.3d 1110, 1114 (7th Cir. 2014) ("For if there is a substantial number of such jobs in the nation, the applicant's claim fails, no matter how few there are in his locality or region").

Because the VE "identifie[d] a significant number of jobs [Stephanie was] capable of performing and [that] testimony [was] uncontradicted (and is otherwise proper)," it was not error for the ALJ to rely on the VE's testimony as to the jobs of domestic laundry worker and patch worker. *Liskowitz v. Astrue*, 559 F.3d 736,

---

[7] The ALJ testified that only his answers as to absenteeism and off-task behavior were based upon his professional and personal experience. *See* AR 79.

746 (7th Cir. 2009).  The VE's testimony provides substantial evidence for the ALJ's Step Five finding.

## V

For the reasons set forth above, it is recommended that:  1) the Plaintiff's Motion for Summary Judgment (Doc. 12) be denied; 2) the Defendant's Motion for Summary Affirmance (Doc. 16) be granted; 3) The Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Andrew Saul, Commissioner of Social Security, denying benefits to the Plaintiff, Stephanie N., is AFFIRMED."; and 4) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation.  FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on July 29, 2020.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE